**Mary M. LISI, Chief Disciplinary Counsel,**

v.

**Thomas W. PEARLMAN.**

No. 94–258–M.P.

Supreme Court of Rhode Island.

May 10, 1994.

Mary M. Lisi, Chief Disciplinary Counsel, for petitioner.

Shayle Robinson, Robinson & Robinson, Cranston, for respondent.

OPINION

PER CURIAM.

The respondent attorney, Thomas W. Pearlman, is before the Supreme Court pursuant to Article III of the Supreme Court Rules, Disciplinary Procedure for Attorneys. Rule 6(d) of Article III provides in part that:

"If the [Disciplinary] Board determines that a proceeding * * * should be concluded by * * * suspension * * * it shall submit its findings and recommendations, together with the entire record, to this Court. This Court shall review the record and enter an appropriate order."

Two separate and unrelated complaints against respondent were simultaneously heard and reported to this court by the board. The respondent was afforded an opportunity to show cause why the sanctions recommended should not be adopted by this court. We find that cause has not been shown.

In the first case the complaint against respondent arose out of the following facts, as attested to by him at the Disciplinary Board hearing on June 16, 1993.

In May 1990 respondent was retained to represent Teresa Tai–Ling Lin (client) in a divorce action filed by her husband in Family Court.[1] The respondent was originally contacted via telephone by Edward Ornelas (Ornelas), the brother-in-law of client. Ornelas asked respondent if he would consider representing client and explained that she had some difficulty with the English language. Ornelas then indicated that he and client would telephone respondent by means of a conference call. During that telephone conversation, respondent spoke directly with client, who was able to communicate in En-

---

1. The client resided in Colorado. The respondent never met her in person and communicated with her either via telephone or through the mail. She was not present at the divorce proceeding.

glish. A minimum fee of $2,500 plus costs was quoted. The client pleaded with respondent to take the case for $1,250 because she was suffering financial hardship. He agreed to the lower price on the condition that the matter proceeded uncontested, but if the case became contested, the fee would be $2,500 plus costs. No written agreement was signed. The matter proceeded in an unremarkable manner and respondent kept client apprised of the progress of the case.

The case was assigned to the contested calendar by the attorney for client's husband in September 1990. The case was heard before Justice Crouchley on March 19, 1991, after several continuances. The respondent testified at the Disciplinary Board hearing that on the afternoon of March 19, 1991, he had a prior commitment and that his son Josh, also an attorney and familiar with client's case, entered his appearance. All issues between client and her husband were settled but for the $1,500 balance due to respondent.[2] The respondent had tried to persuade the husband to pay client's counsel fees, but he refused.

The respondent's and client's versions of the facts diverge at this point. The respondent alleges that he attempted to telephone client but was unable to contact her. He then telephoned and spoke with Ornelas, who on all previous occasions had instructed respondent pursuant to client's instructions. The respondent claims that Ornelas told him to settle the divorce matter and that his fee would be paid. Relying upon this representation, respondent instructed his son to read the following provision into the record:

"The wife shall pay Thomas W. Pearlman, Esquire counsel fee in the amount of $1,500.00 before the entry of the Final Judgment."

After the hearing a draft of the interlocutory decree was prepared based upon the ruling of the court. It included the award of $1,500 counsel fees to respondent. A copy of the interlocutory decree was forwarded to client on or about March 23, 1991. The Disciplin-

ary Board found that client became unhappy about the fee at this point. The respondent received a letter from opposing counsel, dated April 1, 1991, indicating that he had received a telephone call from Ornelas who claimed that no agreement had been reached regarding the $1,500 attorney's fee. Despite this notice of the fee dispute, respondent forwarded the draft of the interlocutory decree that contained the fee provision to the court. The decree was subsequently entered.

At some point prior to the entry of final judgment, client offered respondent an additional $500 in settlement of the disputed fee, but he refused. On or about June 6, 1991, respondent filed a small-claims action against client, seeking payment of the $1,500 fee. Shortly thereafter, he prepared a draft of the final decree. The decree, which still contained the provision requiring client to pay counsel fees of $1,500, was forwarded to the court and entered on June 20, 1991.[3] The respondent received a default judgment against client in small-claims court on August 29, 1991. However, he now asserts that he has waived the $1,500 judgment.

The Disciplinary Board found that respondent violated Article V, Rule 1.7(b) of the Rules of Professional Conduct, which provides:

"A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

(1) the lawyer reasonably believes that the representation will not be adversely affected; and

(2) the client consents after consultation."

The board found that respondent clearly knew of the fee dispute at the time the interlocutory decree was forwarded to the court. The respondent continued to represent client while his small-claims suit was

2. The respondent explained that the $1,500 balance was from the $2,500 fee for the contested divorce, less the $1,250 payment made by client near the time he was retained, plus $250 in costs.

3. The respondent had changed the language of the fee provision slightly to read that his fee would be paid "forthwith" instead of "before the entry of the Final Judgment."

pending against her. Lastly, respondent had the final decree entered, knowing of client's objection to the fee and to the fee provision, as well evidenced by the pending small-claims action. For this violation the board recommended that he be suspended from practice for a period of three months.

The second complaint arose out of the following facts. On June 27, 1990, the complainants, Leo and Maureen Tondreau (clients) retained respondent to represent them in connection with the sale of their home in Johnston, Rhode Island (the property).[4] The clients informed respondent that there were several liens on the property, including liens by the Internal Revenue Service (IRS), the Department of Employment Security (DES), and a former supplier named Santoro. They believed that the total value of the liens and the existing mortgage on the property was greater than the sale price and wanted respondent to negotiate a decrease in the liens. A written fee agreement was signed in which the clients agreed to pay respondent one-third of the savings on the liens he negotiated, plus title search and closing costs.

Most of the work done on clients' case was performed by attorney David Yavner (Yavner), who was associated with respondent in the mid–1980s. Yavner later worked as an independent contractor for respondent, charging an hourly rate for services rendered. After some investigation by respondent and a title search, it was determined that the IRS lien was just under $72,000, the DES lien approximately $5,100, and that no lien by Santoro existed on the property.

The respondent negotiated the DES lien to $2,500. The payoff figure of the IRS lien, $28,262.89, is undisputed. However, the parties disagree as to who successfully negotiated it. The respondent claims that both he and Yavner spoke with the IRS and were able to negotiate the lien. He testified that after obtaining a payoff figure, he instructed clients to go in person to the local IRS office and sign a hardship waiver. The respondent

was unable to produce such a document, and clients denied ever having signed one. The clients, however, testified that because respondent was taking no action regarding the IRS lien and that the sale of the property was in jeopardy because of the delay, they themselves went to the IRS office on three occasions. They denied that respondent had instructed them to do so. The clients eventually spoke with a Mr. Prete and negotiated the payoff figure.

The clients also told respondent that there were two additional creditors who had not filed liens but whom the clients wished to pay from the sale proceeds. The clients indicated that they wanted documents prepared that would assure the creditors of payment. The respondent suggested drafting mortgages and indicated that he too should be given an assurance. It is undisputed that on July 27, 1990, Yavner, at the direction of respondent, prepared a mortgage for $15,000 to secure payment of the legal fees. The respondent insisted, however, that clients were in favor of it. The clients testified at the disciplinary hearing that they had requested a document to give to the two creditors but that they did not request a mortgage. It is undisputed that respondent neither instructed clients to seek advice from independent counsel prior to signing the mortgage documents in his favor nor explained the ramifications of the mortgage to them. All three mortgages were duly recorded.

The closing on the property occurred on August 21, 1990. To satisfy respondent's mortgage, $15,000 was deducted from the sale proceeds. At 7 a.m. the following morning Yavner, at the direction of respondent, telephoned clients and informed them that a mistake in their bill had been made and that they owed respondent an additional $3,783.72. The clients requested an itemized bill, which showed charges for one-third of the savings on the IRS, DES, and Santoro liens, the $2,500 that respondent had advanced in satisfaction of the DES lien payoff, and title search and closing costs.

---

4. The respondent was also representing clients in a personal-injury action in which they were seeking damages for a foot injury suffered by Leo Tondreau. The respondent withdrew his appear-

ance in that action prior to settlement because of the dispute with clients over the bill in this action.

Although there was some dispute concerning the IRS lien, the board found that respondent had rendered services toward reducing it and had billed in accordance with the written fee agreement. However, the board found that respondent's fee was unreasonable because he had charged clients one-third of the savings on the Santoro lien, which had never existed. Additionally, respondent violated Rule 1.8(a) of the Rules of Professional Conduct because, by his own admission, he did not meet the requirements for obtaining a security interest in clients' property. He did not advise clients to seek independent advice before signing the mortgage documents in his favor, nor did he explain to them the consequences of signing them.

The Disciplinary Board found that respondent had violated Rule 1.5(a) of the Rules of Professional Conduct, which requires that a lawyer's fee be reasonable, and Rule 1.8(a) that provides in pertinent part:

"A lawyer shall not * * * knowingly acquire * * * security or other pecuniary interest adverse to a client unless:

(1) the transaction and terms on which the lawyer acquires the interest are fair and reasonable to the client and are fully disclosed and transmitted in writing to the client in a manner which can be reasonably understood by the client;

(2) the client is given a reasonable opportunity to seek the advice of independent counsel in the transaction; and

(3) the client consents in writing thereto."

For these violations the board recommended suspension from practice for a period of three months.

After our review of the record in these cases, the court is of the opinion that the Disciplinary Board's conclusions in regard to violations of the rules are amply supported. Their recommendation for suspension from the practice of law for a period of three months in each case is justified.

Therefore, we order that the respondent be suspended from the practice of law for a total period of six months commencing on June 1, 1994. On completion of that period of suspension the respondent may apply to this court for reinstatement and must produce satisfactory proof of full compliance with this order of suspension.

In order to protect the interests of his current clients, the respondent shall file with the clerk of this court either a list of all active clients or a statement by an attorney or attorneys who will assume responsibility to protect those clients' interests.